## MURPHY *v.* COOPER.

---

PATENTS; INTERFERENCE; CONSTRUCTION OF CLAIMS; RIGHT TO MAKE CLAIMS.

1. In an interference, a claim should be given the broadest interpretation which it will reasonably support, and limitations will not be read into it to meet the exigencies of a particular situation (following *Miel* v. *Young,* 29 App. D. C. 481; *Geltz* v. *Crozier,* 32 App. D. C.

324; *Western Electric Co.* v. *Martin,* 39 App. D. C. 147; and *Leonard* v. *Horton,* 40 App. D. C. 22); but where the difference in the invention clearly appears, the claims should be given a reasonable interpretation, consistent with the specification in which they originated, to the end that the real inventor may be given the award of priority.

2. Where one of the parties to an interference copied the claims of his adversary which were made the issues of an interference then declared, and they called for a car end composed of three sections, two of which were duplicates and the third, an intermediate section, forming a connection between the duplicate sections, and his specifications and drawings called for and showed a car end composed of seven sections, the top and bottom ones being different in shape and conformation, while the intermediate ones were alike, it was *held* that he was not entitled to make the claims of the issue, and that the other party was entitled to an award of priority.

No. 1047.   Patents Appeals.   Submitted May 11, 1916.   Decided May 22, 1916.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.        *Affirmed.*

The facts are stated in the opinion.

*Mr. O. R. Barnett, Mr. P. H. Truman,* and *Mr. J. M. Coit* for the appellant.

*Mr. F. R. Cornwell, Mr. C. S. Butler, Mr. L. S. Bacon,* and *Mr. J. H. Milans* for the appellee.

Mr. Justice ROBB delivered the opinion of the court:

This is an appeal from a decision of the Patent Office in an interference proceeding in which priority of invention was awarded to the party James J. Cooper.

The counts of the issue read as follows:

"1. A car end composed of a plurality of sections of corrugated sheet metal, two of which sections are duplicates, and a third intermediate section forming a connection between the du-

plicate sections, the lower edge of which intermediate section is formed so as to conform to the upper edge of the lower section.

"2. A car end composed of a plurality of horizontally disposed panels or sections of sheet metal, each of which is provided with a stiffening rib or corrugation, two of which sections are duplicates, and a third section arranged between and connecting the duplicate sections, the upper and lower edges of which intermediate section is formed so as to conform to the corresponding edges of the upper and lower sections."

These claims originated in the Cooper application and were copied by Walter P. Murphy. They relate to a car end. In his specification Cooper says that his object is to make this car end of sections, "two of which are duplicates, thus making it possible to utilize comparatively small sections of sheet metal in the formation of the completed end wall or plate, and to reduce to a minimum the waste of material utilized in the construction of the car ends." Later he says: "The car end is composed of three sections, 1, 2, and 3, the lower or base section 1 and the upper or top section 2 being alike in size and construction, and for this reason these two main sections can be formed with the same die or press. * * * The upper edge of each of the main sections is anticlinal, that is, it slopes gradually upward from the sides to the center, and thus when the end wall or plate is completed, the upper edge conforms to the shape of the car roof." It is obvious that in this construction only two dies are necessary for the formation of all the parts for a complete car end. As two of the sections are duplicates in shape, they may be used interchangeably, and it is necessary to keep a supply of only two kinds of sections on hand.

The novel features of the Cooper invention clearly were not in Murphy's mind when he filed his application, nor were they disclosed either in his specification or drawings. In his specification he says: "The sheet metal car end of my present invention consists of a number of sheets or bands of metal extending from side to side of the car, attached to each other and to the side walls, roof structure, and end frame of the car, and provided with hollow reinforcing ribs as will be hereinafter more partic-

ularly described. * * * The fact that. the bands or sheets are comparatively narrow, as I make them by preference, re-duces the costs of manufacture and also the cost of repair in the event that one of the bands becomes injured and has to be re-placed." He shows a car end composed of seven sections, rein-forced by ribs or corrugations, the top and bottom sections being different in shape and conformation, while the intermediate sections are alike. It thus will be seen that it would be impossi-ble for Murphy to construct a car end by the use of only two kinds of sections. Such was not his idea at all, and in order to permit him to make these claims it would be necessary to disregard their natural and obvious meaning.

We have no inclination to modify the rule that a claim should be given the broadest interpretation which it reasonably will support, and that limitations will not be read into it to meet the exigencies of a particular situation. *Miel* v. *Young,* 29 App. D. C. 481; *Geltz* v. *Crozier,* 32 App. D. C. 324; *Western Elec-tric Co.* v. *Martin,* 39 App. D. C. 147; *Leonard* v. *Horton,* 40 App. D. C. 22. But where, as here, the difference in the in-ventions clearly appears, the claims should be given a reason-able interpretation consistent with the specification in which they originated, to the end that the real inventor may be given the award of priority.

The decision is affirmed.                    *Affirmed.*